Slade R. Metcalf (SM 8360)
Katherine M. Bolger (KM 6206)
Jason P. Conti (JC 0581)
Hogan & Hartson LLP
875 Third Avenue
New York, NY  10022
Telephone: (212) 918-3000
Facsimile: (212) 918-3100

*Attorneys for Defendant Twentieth Century Fox
Film Corporation*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------X

JEFFREY LEMEROND,

                                 Plaintiff,     :      Case No.: 07 CIV 4635 (LAP)

         – against –

TWENTIETH CENTURY FOX FILM CORP.,

                               Defendant.   :

--------------------------------------------------------------------X

## MEMORANDUM OF LAW OF TWENTIETH CENTURY FOX FILM CORPORATION IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT

HOGAN & HARTSON LLP
Slade R. Metcalf  (SM 8360)
Katherine M. Bolger (KB 6206)
Jason P. Conti (JC 0581)
875 Third Avenue
New York, New York 10022
Tel.  (212) 918-3000
Fac.  (212) 918-3100

Attorneys for Defendant Twentieth Century
  Fox Film Corporation

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ......................................................................................1

FACTUAL BACKGROUND ..........................................................................................2

    A.  The Parties ........................................................................................................2

    B.  The Complaint ..................................................................................................2

    C.  The Film And The Sequence .............................................................................3

ARGUMENT ...................................................................................................................5

I    PLAINTIFF'S CLAIM FOR COMMERCIAL MISAPPROPRIATION
    MUST FAIL BECAUSE THE FILM IS NEWSWORTHY AND
    BECAUSE THE USE OF PLAINTIFF'S IMAGE BEARS A REAL
    RELATIONSHIP TO THE THEME OF THE FILM...............................................5

    A.  The Standard On A Motion To Dismiss .............................................................5

    B.  Plaintiff's Misappropriation Claim Must Fail Because Use Of His Image Had A
       Real Relationship To The Public Interest And Newsworthiness Of The Film...................6

        1.  There Must Be A *Direct, Commercial* Misappropriation Of An
           Individual's Image Or Name To Maintain A Section 51 Claim....................................7

           a.  The Film Is Newsworthy And Pertains To A Matter Of Public Interest .................9

           b.  The Inclusion Of Plaintiff In The Film Has A Real Relationship
               To Its Newsworthy Purpose...................................................................................13

        4.  Any Discussion Regarding The Ability Of The Film To Make A Profit
           Or Plaintiff's Level Of Embarrassment
           Is Not Relevant To The Section 51 Inquiry.................................................................15

II    PLAINTIFF'S CLAIM FOR QUANTUM MERUIT/UNJUST
    ENRICHMENT IS SUBSUMED BY HIS MISAPPROPRIATION
    CLAIM, AND THEREFORE SHOULD BE DISMISSED ....................................17

CONCLUSION...............................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

<u>Federal Cases:</u>

*Allen v. St. Cabrini Nursing Home, Inc.,*
No. 00 CIV 8558 CM, 2001 WL 286788 (S.D.N.Y. Mar. 9, 2001) ........................................16

*Arnold v. ABC, Inc.,*
No. 06 Civ. 1747(GBD), 2007 WL 210330 (S.D.N.Y. Jan. 29, 2007).....................................3

*Bose Corp. v. Consumers Union of United States, Inc.,*
466 U.S. 485 (1984).........................................................................................................6

*Cerasani v. Sony Corp.,*
991 F. Supp. 343 (S.D.N.Y. 1998)....................................................................................5

*Chambers v. Time Warner, Inc.,*
282 F.3d 147 (2d Cir. 2002).............................................................................................3

*Church of Scientology, Int'l v. Time Warner, Inc.,*
903 F. Supp. 637 (S.D.N.Y. 1995)...............................................................................5, 6

*Cortec Indus., Inc. v. Sum Holding L.P.,*
949 F.2d 42 (2d Cir. 1991)...............................................................................................3

*Glickman v. Stern,*
19 Med. L. Rptr. 1769 (Sup. Ct. N.Y. Co. Oct. 15, 1991),
*aff'd,* 188 A.D.2d 387, 592 N.Y.S.2d 581 (1st Dep't 1992).......................................10, 11, 12

*Hoepker v. Kruger,*
200 F. Supp. 2d 340 (S.D.N.Y. 2002)..............................................................................7

*Hurwitz v. United States,*
884 F.2d 684 (2d Cir. 1989),
*cert. denied,* 493 U.S. 1056 (1990)..................................................................................7

*International Jet Markets, Inc. v. Simat, Helliesen & Eichner, Inc.,*
No. 95 CIV. 7967(TPG), 1997 WL 501685 (S.D.N.Y. Aug. 20, 1997)...................................17

*Jones v. Turner,*
No. 94 Civ. 8603 (PKL), 1995 WL 106111 (S.D.N.Y. Feb. 7, 1995)................................7, 16

*Kane v. Comedy Partners,*
No. 00 Civ. 158(GBD), 2003 WL 22383387 (S.D.N.Y. Oct. 16, 2003) ..........................11, 12

\\\NY - 027721/000002 - 1049606 v2

*Man v. Warner Bros. Inc.*,
    317 F. Supp. 50 (S.D.N.Y. 1970).........................................................................9, 16

*Messenger v. Gruner + Jahr Printing and Publ'g*,
    175 F.3d 262 (2d Cir. 1999)..................................................................................14

*Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*,
    418 F.3d 168 (2d Cir. 2005)..................................................................................17

*Myskina v. Conde Nast Publ'ns, Inc.*,
    386 F. Supp. 2d 409 (S.D.N.Y. 2005)..........................................................8, 16, 17

*New York Times Co. v. Sullivan*,
    376 U.S. 254 (1964)...............................................................................................6

*Oliver v. The Village Voice, Inc.*,
    417 F. Supp. 235 (S.D.N.Y. 1976).........................................................................6

*Preston v. Martin Bregman Prods., Inc.*,
    765 F. Supp. 116 (S.D.N.Y. 1991).........................................................................9

*Strauss v. Hearst Corp.*,
    No. 85 Civ. 10017 (CSH), 1988 WL 18932 (S.D.N.Y. Feb. 19, 1988)................17

*Weil v. Johnson*,
    No. 119431/02, 2002 WL 31972157 (Sup. Ct. N.Y. Co. Sept. 27, 2002) .............10

*Yurman Design Inc. v. Chaindom Enters., Inc.*,
    No. 99 Civ. 9307 (JFK), 2000 WL 897141 (S.D.N.Y. July 5, 2000) ........................5

*Zerman v. Sullivan & Crowell*,
    677 F. Supp. 1316 (S.D.N.Y. 1988)........................................................................5

*Zoll v. Jordache Enters. Inc.*,
    No. 01 Civ. 1339(CSH), 2002 WL 31873461 (S.D.N.Y. Dec. 24, 2002) .............18

**State Cases:**

*Abdelrazig v. Essence Commcn's, Inc.*,
    225 A.D.2d 498, 639 N.Y.S.2d 811 (1st Dep't 1996).............................................10

*Arrington v. New York Times Co.*,
    55 N.Y.2d 433, 440 N.Y.S.2d 941 (1982) ............................................................13

*Beverley v. Choices Women's Med. Ctr., Inc.*,
    141 A.D.2d 89, 532 N.Y.S.2d 400 (2d Dep't 1988)...............................................8

iii

*De Gregorio v. CBS, Inc.*,
    123 Misc. 2d 491, 473 N.Y.S.2d 922 (Sup. Ct. N.Y. Co. 1984) ...............................9

*Delan v. CBS, Inc.*,
    91 A.D.2d 255, 458 N.Y.S.2d 608 (2d Dep't 1983).........................................7, 9

*Doe v. One America Productions, Inc.*,
    SC091723 (Sup. Ct. Los Angeles Co. Feb. 15, 2007) ...........................................12

*Finger v. Omni Publ'ns Int'l*,
    77 N.Y.2d 138, 564 N.Y.S.2d 1014 (1990) ........................................................6, 14

*Frank v. National Broad. Co.*,
    119 A.D.2d 252, 506 N.Y.S.2d 869 (2d Dep't 1986)............................................11

*Gaeta v. Home Box Office*,
    169 Misc. 2d 500, 645 N.Y.S.2d 707 (N.Y. Civ. Ct. N.Y. Co. 1996) ....................16

*Gautier v. Pro-Football, Inc.*,
    304 N.Y. 354, 107 N.E.2d 485 (1952).....................................................................9

*Hampton v. Guare*,
    195 A.D.2d 366, 600 N.Y.S.2d 57 (1st Dep't 1993)........................................8, 18

*Howell v. New York Post Co.*,
    81 N.Y.2d 115, 596 N.Y.S.2d 350 (1993) ...............................................................7

*Messenger v. Gruner + Jahr Printing and Publ'g*,
    94 N.Y.2d 436, 706 N.Y.S.2d 52 (2000) ....................................................... passim

*Nieves v. Home Box Office, Inc.*
    11 Misc. 3d 1058(A), 815 N.Y.S.2d 495,
    2006 WL 516797 (Sup. Ct. N.Y. Co. Jan 10, 2006),
    *aff'd*, 30 A.D.3d 1143, 817 N.Y.S.2d 227 (1st Dep't 2006)...................................15

*Nussenzweig v. DiCorcia*,
    11 Misc.3d 1051(A), 814 N.Y.S.2d 891,
    2006 WL 304832 (Sup. Ct. N.Y. Co. Feb. 8, 2006),
    *aff'd*, 38 A.D.3d 339, 832 N.Y.S.2d 510 (1st Dep't 2007).......................................6

*Stephano v. News Group Publ'ns Inc.*,
    64 N.Y.2d 174,  485 N.Y.S.2d 220 (1984) ......................................................9, 16

*Walter v. NBC Television Network, Inc.*,
    27 A.D.3d 1069, 811 N.Y.S.2d 521 (4th Dep't 2006) ...................................7, 10, 12

\\\NY - 027721/000002 - 1049606 v2

*Ward v. Klein*,
　　10 Misc. 3d 648, 809 N.Y.S.2d 828 (Sup. Ct. N.Y. Co. 2005) .................................................10

## **Federal Statutes/Rules**

Fed. R. Civ. P. 12(b)(6)..................................................................................................................1, 5

Fed. R. Civ. P. 56..............................................................................................................................1

## **State Statutes**

N.Y. Civ. Rights Law § 50 ..........................................................................................................6, 17

N.Y. Civ. Rights Law § 51 ..................................................................................................... *passim*

\\\NY - 027721/000002 - 1049606 v2

Defendant Twentieth Century Fox Film Corporation ("Fox" or "Defendant"), by its undersigned attorneys, respectfully submits this memorandum of law in support of its motion to dismiss the complaint of plaintiff Jeffrey Lemerond ("Plaintiff")—pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").[1]

## Preliminary Statement

Plaintiff here claims simply that his image was used for commercial purposes when he was portrayed in a motion picture running down a public street in Manhattan. He also claims embarrassment and humiliation because he was truthfully pictured in the vicinity of Fifth Avenue and 57th Street running away from Borat Sagdiyev, the fictional star of the 2006 comedy film *Borat – Cultural Learnings of America for Make Benefit Glorious Nation of Kazakhstan* (the "Film"). Plaintiff claims that because he is shown in the Film for 13 seconds reacting to an enthusiastic greeting from Borat, he is entitled to compensation.

Plaintiff's claims are meritless. His claim for violation of New York's misappropriation statute cannot stand because the Film is newsworthy, pertains to a matter of legitimate public concern, and thus under well-established New York case law, the brief use of Plaintiff's image in the Film does not come within the statute. Additionally, Plaintiff cannot sustain an unjust enrichment claim because such a claim is duplicative of his misappropriation cause of action.

This Court, therefore, should grant Fox's motion to dismiss, with prejudice.

---

[1] The facts necessary for the determination of this motion are set forth in the accompanying declarations of Bonnie I. Bogin ("Bogin Decl."), sworn to the 19th day of July, 2007, and of Slade R. Metcalf, ("Metcalf Decl."), sworn to the 23rd day of July, 2007, and the exhibits annexed thereto. The facts set forth in these declarations will not transform this Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment. (*See* footnote 3, *infra*.)

**Factual Background**

A.    **The Parties**

Plaintiff Jeffrey Lemerond is, according to his complaint, a resident of New York City. Metcalf Decl., Ex. A, Complaint ¶ 2.

Defendant Fox is a corporation incorporated under the laws of the State of Delaware, with its principal place of business in California.  Bogin Decl. ¶ 2.

B.    **The Complaint**

On June 1, 2007, Plaintiff—suing as "John Doe"—filed a complaint with this Court naming Fox as the only defendant.  Metcalf Decl. ¶ 3.  On June 22, 2007, the Honorable William H. Pauley, III issued an order stating that because Plaintiff originally filed this lawsuit anonymously, "without obtaining prior permission of this Court," Plaintiff's counsel was "directed to show cause" why Plaintiff should be able to proceed anonymously "in light of his statements to the press about this lawsuit."[2] *Id.* ¶ 5, Ex. A.  Plaintiff then filed an Amended Complaint (the "Complaint") in his own name, Jeffrey Lemerond, on June 26, 2007.  (A true and correct copy of the Complaint is annexed as Exhibit B to the Metcalf Decl.).  Counsel for Fox agreed to accept service of the Complaint.  *Id.*  On July 9, 2007, this action was transferred from Judge Pauley to the Honorable Loretta A. Preska.  *Id.*  The parties then agreed to a briefing schedule for the instant motion to dismiss, which was so ordered by the Court.  *Id.* ¶ 9.

The Complaint stems from Plaintiff's alleged appearance in a brief sequence contained in the Film.  Complaint ¶¶ 1, 7.  Plaintiff claims he is "depicted, on two occasions, being chased by actor Sasha Cohen [sic] near the vicinity of Fifth Avenue and 57th Street in Manhattan".  *Id.* ¶ 7. Plaintiff alleges that he is "seen fleeing in apparent terror, screaming for Mr. Cohen to 'go

---

[2] In addition to his counsel's statements to the press, in January, 2007 Plaintiff filed—and then withdrew—a state court action in the Supreme Court of the State of New York, County of New York, that was similar to this lawsuit, in which he sued under his full name.  Metcalf Decl. ¶ 2.

away.'"  *Id.* ¶ 8.  As a result of this alleged appearance in the Film, Plaintiff asserts that he has

"suffered public ridicule, degradation, and humiliation."  *Id.* ¶ 15.  Plaintiff includes two causes

of action in the Complaint: the first claim is for a violation of "New York Civil Rights Act [sic] §

51", and the second is for "quantum meruit/unjust enrichment".  *Id.* ¶¶ 19-27.

## C.     The Film And The Sequence

The Film, which was distributed by Fox, was first released in theaters in the United States

on or about November 3, 2006, and was released on DVD in the United States on March 6, 2007.

Bogin Decl. ¶ 5.    (A true and correct copy of the Film on DVD is included as Exhibit A to the

Bogin Decl.)[3]  The documentary-style Film tells the fictional story of Borat Sagdiyev ("Borat"),

a Kazakh TV personality dispatched to the United States by the Kazakhstan Ministry of

Information to report on the American people.    Comedian and actor Sacha Baron Cohen

("Cohen") created and plays Borat.

In the Film, Borat travels across America with his friend and producer, Azamat Bagatov.

Bogin Decl. Ex. A.  During this transcontinental journey, Borat encounters a homophobic rodeo

owner, kindly Jewish inn keepers, drunken fraternity boys and various other individuals.  *Id.*

---

[3] The inclusion of a DVD copy of the Film (and of the sequence in the Film in which Plaintiff appears) does not convert this motion to dismiss to one for summary judgment because these items are integral to Plaintiff's claims.  *See, e.g., Arnold v. ABC, Inc.*, No. 06 Civ. 1747(GBD), 2007 WL 210330, at *1, n.2 (S.D.N.Y. Jan. 29, 2007) (noting that "The court may, however, consider a document [in conjunction with a motion to dismiss] if the plaintiff 'relies heavily upon its terms and effect,' rendering 'the document 'integral' to the complaint'") (*citing Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (allowing reliance on documents in support of motion to dismiss because they were "integral" to complaint).    In *Arnold*, a trademark infringement action, the court did not convert the motion to dismiss, noting that "plaintiff not only relies *heavily* on the content" of the submitted documents (which included an advertisement and website materials), "she relies *entirely* on this material in crafting her allegations."  *Arnold*, 2007 WL 210330, at *1, n.2 (emphasis in original).    Similarly, here, because Plaintiff relies entirely on the Film in order to bring this action, submission of the Film on DVD, and any sequences contained therein, does not require this Court to convert this motion to one for summary judgment.  *See generally* Complaint.

Cohen employs antics ranging from fish-out-of-water buffoonery, to eccentric and prejudicial commentary, to evoke reactions from the Americans Borat encounters.  *See id.*  Indeed, one apparent theme of the Film is to use comedy to reveal how Americans respond to a foreign visitor's idiosyncratic behavior.  *See id.*

The entire sequence in which Plaintiff is allegedly depicted in any way lasts approximately 13 seconds (the "Sequence").  (A true and correct copy of the DVD of the Film is annexed to the Bogin Decl. as Exhibit A.  A true and correct copy of the Sequence on DVD, which is the same as it appeared in the Film, is annexed to the Bogin Decl. as Exhibit B.)  The Sequence, which appears towards the beginning of the Film, is part of a longer montage in which Borat is depicted interacting with various individuals on the streets and subways of New York. Bogin Decl. Exs. A and B.  The Sequence shows Borat on the corner of Fifth Avenue and 57th Street in Manhattan approaching a man in tan pants and a blue shirt.[4]  *Id.* at Ex. A.  Borat extends his hand to Plaintiff and says in his heavily accented voice, "'Hello, nice meet you.  I'm new in town.  My name a Borat.'"  *Id.*

By the time Borat utters "nice to meet you", without any further provocation, Plaintiff sprints around the corner and down 57th Street.  *Id.*  While running, Plaintiff yells "'Get away'" and then "'What are you doing?'".  *Id.*  Borat follows, responding, "'I want to say hello. What is the problem?'"  Bogin Decl. Ex. A.  It is difficult to see Plaintiff's face because he is running during virtually the entire Sequence.  *See id.*  There is one short period—less than two seconds—when Plaintiff's face comes into closer focus as he races by the camera.  *Id.*  During the Sequence, Harry Nilsson's song "Everybody's Talkin'" plays in the background.  *Id.*

---

[4] For the purposes of this motion, based on the allegations in the Complaint, Fox assumes that this individual is the Plaintiff who commenced this lawsuit.

# ARGUMENT

## I.

## PLAINTIFF'S CLAIM FOR COMMERCIAL MISAPPROPRIATION MUST FAIL BECAUSE THE FILM IS NEWSWORTHY AND BECAUSE THE USE OF PLAINTIFF'S IMAGE BEARS A REAL RELATIONSHIP TO THE THEME OF THE FILM

Here, Plaintiff has asserted a claim for commercial misappropriation pursuant to New York Civil Rights Law ("CRL") § 51 ("§ 51").  Because the Film is newsworthy and of public concern and because there is a real relationship between the depiction of Plaintiff and the newsworthy nature of the Film, Plaintiff cannot prevail.

## A.    The Standard On A Motion To Dismiss

When evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim, a court "must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff."  *Cerasani v. Sony Corp.*, 991 F. Supp. 343, 350, 357 (S.D.N.Y. 1998) (dismissing Section 51 claim on motion to dismiss); *see Zerman v. Sullivan & Crowell*, 677 F. Supp. 1316, 1323 (S.D.N.Y. 1988) (granting defendants' motion to dismiss "invasion of privacy" claim, which court analyzed under § 51).  To survive a motion to dismiss, "the complaint must contain allegations concerning each of the material elements necessary to sustain recovery under a viable legal theory."  *Yurman Design Inc. v. Chaindom Enters., Inc.*, No. 99 Civ. 9307 (JFK), 2000 WL 897141, at *4 (S.D.N.Y. July 5, 2000).  In addition, because this case unquestionably implicates Fox's First Amendment right to communicate an expressive message, this Court must "consider this case against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open and that it may well include vehement, caustic, and sometimes sharp attacks."  *Church of Scientology, Int'l v. Time Warner, Inc.*, 903 F. Supp. 637,

5

640-41 (S.D.N.Y. 1995), *quoting*, *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). *See also Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 511 (1984) (judges "must exercise … review in order to preserve the precious liberties established and ordained in the Constitution."). In particular, this Court should be mindful of the chilling effect that prolonged litigation might have on Fox's ability to exercise its free speech rights. *Oliver v. The Village Voice, Inc.*, 417 F. Supp. 235, 237 (S.D.N.Y. 1976) (the court has a "special responsibility here to determine if there exists a genuine dispute because the danger that speech may be chilled by the mere fact of the litigation.")

**B.    Plaintiff's Misappropriation Claim Must Fail Because Use Of His Image Had A Real Relationship To The Public Interest And Newsworthiness Of The Film**

New York Civil Rights Law § 51 provides that "Any person whose name, portrait, picture or voice is used within this state for advertising purposes or for the purposes of trade" without the written consent of the plaintiff can bring an action to enjoin such use and obtain civil damages. N.Y. CRL § 51. In order to state a claim under § 51, a plaintiff must establish three elements: (1) defendants used his name, portrait, picture or voice within the state of New York; (2) for purposes of trade or advertising; (3) without his written consent. *Finger v. Omni Publ'ns Int'l*, 77 N.Y.2d 138, 141, 564 N.Y.S.2d 1014, 1016 (1990); *Nussenzweig v. DiCorcia*, 11 Misc.3d 1051(A), 814 N.Y.S.2d 891, 2006 WL 304832, at *5 (Sup. Ct. N.Y. Co. Feb. 8, 2006), *aff'd*, 38 A.D.3d 339, 832 N.Y.S.2d 510 (1st Dep't 2007).[5] Section 51, which is the only privacy cause of action under the law of the State of New York, is to be "narrowly construed" and "'strictly limited to nonconsensual <u>commercial appropriations</u> of the name, portrait or picture of a living person.'" *Messenger v. Gruner + Jahr Printing and Publ'g*, 94 N.Y.2d 436, 441, 706

---

[5] N.Y. CRL § 50 is not applicable here because that provision makes it a <u>misdemeanor</u> to use "for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent…." N.Y. CRL § 50.

N.Y.S.2d 52, 55 (2000) (citations omitted) (emphasis added); *See Howell v. New York Post Co.*, 81 N.Y.2d 115, 123, 596 N.Y.S.2d 350, 354 (1993); *see also Hurwitz v. United States*, 884 F.2d 684, 685 (2d Cir. 1989) ("New York's highest court has consistently reminded litigants that no so-called common law right of privacy exists in New York"), *cert. denied*, 493 U.S. 1056 (1990).

   1.    **There Must Be A *Direct, Commercial* Misappropriation Of An Individual's Image Or Name To Maintain A Section 51 Claim**

   It is clear that not all nonconsensual uses of a person's image or likeness are actionable; indeed, there must be a <u>trade or advertising use</u> in order to have a valid claim. New York courts have continually reaffirmed the principle that reports of newsworthy events and matters of public interest do not fit within the definition of "trade or advertising" and thus do not come within the scope of Section 51. *Messenger*, 94 N.Y.2d at 441, 706 N.Y.S.2d at 55; *Delan v. CBS, Inc.*, 91 A.D.2d 255, 259, 458 N.Y.S.2d 608, 613 (2d Dep't 1983) ("The reporting of matters of public information or of legitimate public interest … is a matter of privilege and not within the ambit of the term 'purposes of trade' as used in the Civil Rights Law … notwithstanding the inclusion of commercials.") The question of newsworthiness is one of law for the court to decide. *Walter v. NBC Television Network, Inc.*, 27 A.D.3d 1069, 1070, 811 N.Y.S.2d 521, 523 (4th Dep't 2006). Furthermore, the principle that newsworthy events or matters of public interest are not within the scope of the statute "should be liberally applied." *Jones v. Turner*, No. 94 Civ. 8603 (PKL), 1995 WL 106111, at *20 (S.D.N.Y. Feb. 7, 1995). When speech involves newsworthy events or matter of public interest, "free speech rights clearly transcend privacy rights." *Hoepker v. Kruger*, 200 F. Supp. 2d 340, 349 (S.D.N.Y. 2002).

   Protection for matters of legitimate public interest is particularly relevant for the "communications media", which is defined in the "broadest" possible way to include "the magazine, newspaper, radio and television, motion picture and poster industries". These uses are

7

"exempt from the 'used … for the purposes of trade'" language in §§ 50-51 "when the person's name or picture is used in the particular medium with 'newsworthy events [or] matters of public interest.'"  *Beverley v. Choices Women's Med. Ctr., Inc.*, 141 A.D.2d 89, 94, 532 N.Y.S.2d 400, 404 (2d Dep't 1988).  *See also Hampton v. Guare*, 195 A.D.2d 366, 366, 600 N.Y.S.2d 57, 58 (1st Dep't 1993) ("[W]orks of fiction and satire do not fall within the narrow scope of the statutory phrases 'advertising' and 'trade'.").  The broad rule is essential in order to "reflect[] Federal and State constitutional concerns for free dissemination of news and other matters of interest to the public…"  *Myskina v. Conde Nast Publ'ns, Inc.*, 386 F. Supp. 2d 409, 417 (S.D.N.Y. 2005) (publication of semi-nude photographs of Russian tennis star in Russian magazine was newsworthy).

This broad communications media exemption, however, is not absolute.  Courts look to two considerations in determining whether the use of a person's name or likeness in expressive works (such as motion pictures) fall outside the scope of § 51: (1) whether the expressive work is newsworthy or of public interest, and (2) whether there is a real relationship between the use of the person's name or image and the newsworthy purpose of the work.  *See Messenger*, 94 N.Y.2d at 442-43, 706 N.Y.S.2d at 55-56.[6]  Here, the use of Plaintiff's likeness in the Film meets

---

[6] Plaintiff claims in the Complaint that because he allegedly appeared in the trailer for the Film with his face scrambled, this somehow demonstrates that Fox "knew that it was unlawful to use Plaintiff's likeness [in the Film] without his consent …".  Complaint ¶ 11.  Assuming Plaintiff did in fact appear in the trailer for the Film, and that his face was in fact scrambled, it has absolutely no bearing on the present inquiry.  This case is about the Film, not a trailer for the Film.  Plaintiff has not sued (and could not sue) regarding the trailer because there was no recognizable image of him.  Indeed, Plaintiff has no knowledge of Defendant's reasons for electing to scramble his face. Further, whatever the reasons were that Plaintiff's face was scrambled in the trailer, those reasons are not relevant to the use of Plaintiff's likeness in the Film.  As noted, the inquiry centers on (1) whether the work in which the image is used is newsworthy or of public interest, and (2) whether there is a real relationship between the use of the person's image and the newsworthy purpose of the work.  *See Messenger*, 94 N.Y.2d at 442-

both of these requirements.[7]

      a.      <u>The Film Is Newsworthy And Pertains To A Matter Of Public Interest</u>

In addressing the first inquiry, "newsworthiness" and matters of "public interest" are to be "broadly construed". *Messenger*, 94 N.Y.2d at 442, 706 N.Y.S.2d at 55. Newsworthiness and the public interest (which frequently are used interchangeably by New York courts) have been "defined in the most liberal and far-reaching terms," including going far beyond mere news including current events, but extending to "include all types of factual, educational and historical data, or even entertainment and amusement, concerning interesting phases of human activity in general." *De Gregorio v. CBS, Inc.*, 123 Misc. 2d 491, 493, 473 N.Y.S.2d 922, 924 (Sup. Ct. N.Y. Co. 1984) (couple holding hands on public street included in television broadcast about couples in love deemed newsworthy). For other instructive examples, *see Stephano v. News Group Publ'ns Inc.*, 64 N.Y.2d 174, 184, 485 N.Y.S.2d 220, 225 (1984) (article about fashion was a matter of public concern and could not form basis for § 51 claim); *Gautier v. Pro-Football, Inc.*, 304 N.Y. 354, 357-58, 361, 107 N.E.2d 485, 487, 489 (1952) (animal trainer performing at half-time of football game and displayed on television in between commercial breaks not shown

---

43, 706 N.Y.S.2d at 55, 56. The work here is the Film, not the trailer. As such, any use of Plaintiff's image in the trailer—blurred or otherwise—is irrelevant.

[7] A separate basis for the exemption of a non-consensual use of a person's name or likeness is where the use is "fleeting and incidental." The thirteen-second use of the image of Plaintiff (who is identifiable on the screen for only two of those seconds) would undoubtedly be deemed fleeting. Assuming *arguendo* that this Court were to determine that there is an issue as to whether Plaintiff can establish that there is no real relationship between the newsworthy nature of the Film and the use of Plaintiff's likeness in the Film, then the use of Plaintiff's image should be found as a matter of law to be incidental. In that event, under long-established precedent in New York, the use would not be actionable under § 51. See, e.g., *Man v. Warner Bros. Inc.*, 317 F. Supp. 50 (S.D.N.Y. 1970); *Delan v. CBS, Inc.*, 91 A.D.2d 255, 458 N.Y.S.2d 608 (2d Dep't 1983). It has long been determined that "[l]iability under section 51 is limited ..... by the doctrine of incidental use, under which merely incidental or isolated uses of a name, picture, or portrait are not actionable." *Preston v. Martin Bregman Prods., Inc.*, 765 F. Supp. 116, 118-19 (S.D.N.Y. 1991).

for purposes of trade under § 51); *Abdelrazig v. Essence Commcn's, Inc.*, 225 A.D.2d 498, 498, 639 N.Y.S.2d 811, 812 (1st Dep't 1996) (photograph of plaintiff wearing "traditional African garb" to illustrate article on fashion trends in black community newsworthy and not actionable); *Ward v. Klein*, 10 Misc. 3d 648, 653-54, 809 N.Y.S.2d 828, 833 (Sup. Ct. N.Y. Co. 2005) (plaintiff's appearance in VH1 "rockumentary" about rock band KISS newsworthy); *Weil v. Johnson*, No. 119431/02, 2002 WL 31972157, at *4-5 (Sup. Ct. N.Y. Co. Sept. 27, 2002) (documentary on lives of children from wealthy families of public concern and not actionable).

As evidenced by this eclectic list, the breadth of topics considered newsworthy must encompass a documentary-style film with clear themes of satire and comedy. In fact, several cases involving comedy skits have been deemed newsworthy. For example, in *Walter v. NBC Television Network, Inc.*, 27 A.D.3d 1069, 811 N.Y.S.2d 521 (4th Dep't 2006), the plaintiff sued NBC because her photograph was displayed during the comedic "Headlines" segment of "The Tonight Show". In reversing the lower court, the Appellate Division, Fourth Department dismissed the § 51 claim against NBC finding the comedic skit "newsworthy." *Id.* The court determined that "A performance involving comedy and satire may fall within the ambit of the newsworthiness exception even if the performance is not related 'to a 'legitimate' news broadcast [or event]'". *Id.* 27 A.D.3d at 1070-71, 811 N.Y.S.2d at 523 (citations omitted).

Similarly, a comedic skit on the Howard Stern Radio Show, which was also televised, was deemed newsworthy and not actionable pursuant to § 51. In *Glickman v. Stern*, 19 Med. L. Rptr. 1769 (Sup. Ct. N.Y. Co. Oct. 15, 1991), *aff'd*, 188 A.D.2d 387, 592 N.Y.S.2d 581 (1st Dep't 1992), the plaintiff sued regarding a comedy skit filmed with Stern and plaintiff's wife. (A true and correct copy of the decision is annexed hereto as Exhibit A.) During the skit, Stern and others dressed up in Halloween costumes and went trick or treating in Queens. *Id.* at 1770.

\\\NY - 027721/000002 - 1049606 v2

After meeting plaintiff's wife on the street, and learning that she was married, Stern asked to go back to her house for a "rub-down". *Id.* During the subsequent airing on television of Stern's visit, plaintiff's wife is shown giving Stern a massage while dressed in a negligee. In addition, for a few seconds during the segment, plaintiff's image from his wedding photograph appears on screen while Stern talks about how "lucky" plaintiff is because he had an attractive wife. *Id.* The court determined that the comedy "rub-down" skit was newsworthy, as it fell "within the ambit of matters involving 'the frailties of neighbors'", which are of public concern. *Glickman*, 19 Med. L. Rptr. at 1776 ("[C]ourts will not endeavor to supplant the editorial judgment of the media in determining what is 'newsworthy' or of 'public interest'"). In arriving at this conclusion, the court noted that humor has been called "the true democracy", which "has been used throughout the centuries by writers to depict and analyze human inadequacies." *Id.* at 1769 (noting that "Humor is a serious thing, I like to think of it as one of our greatest and earliest natural resources which must be preserved at all costs"). S*ee also Kane v. Comedy Partners*, No. 00 Civ. 158(GBD), 2003 WL 22383387, at *8-9 (S.D.N.Y. Oct. 16, 2003) (presenting and criticizing six seconds of plaintiff's public access show on  "Public Excess" comedy skit contained in half-hour mock news show—"The Daily Show"—falls within "'entertainment and amusement' branch of the newsworthy exception") (citations omitted); *Frank v. National Broad. Co.*, 119 A.D.2d 252, 256, 506 N.Y.S.2d 869, 871 (2d Dep't 1986) (dismissing § 51 claim on motion to dismiss because comedy skit on "Saturday Night Live" not for advertising or trade).

Embracing the view that comedy can be an effective vehicle to expose social frailties, one court has already determined that the Film at issue here is in fact a matter of significant public interest. In a separate case involving the Film, two members of a fraternity who appear in a sequence in the Film filed a complaint in California alleging six causes of action, including a

11

right of publicity claim, alleging their depiction in the Film made them appear racist, sexist and misogynistic.  The Superior Court of California, County of Los Angeles dismissed the complaint as a "strategic lawsuit against public participation".  *Doe v. One America Productions, Inc.*, SC091723 (Sup. Ct. Los Angeles Co. Feb. 15, 2007) (A true and correct copy of the decision is annexed hereto as Exhibit B).  As part of the analysis, the court held "[I]t is beyond reasonable dispute (and undisputed) that the topics addressed and skewered in the movie – racism, sexism, homophobia, xenophobia, anti-semitism [sic], ethnocentrism, and other societal ills – are issues of public interest, and that the movie itself has sparked significant public awareness and debate about these topics."  *Id.* at 4.  The court further noted, "The movie is not about whether these specific plaintiffs held racist, sexist, or anti-Semitic views, but rather concerns the general topics of racism, sexism, homophobia, anti-Semitism, and ethnocentrism, which … are issues of public interest."  *Id.* at 5.  Instead, the court found that like Plaintiff here, the plaintiffs in *Doe* were used to highlight societal problems: "This movie in particular, which is part fiction and part documentary, utilizes the reactions and statements of people such as Plaintiffs to subversively satirize the true targets of the movie: ethnocentrism, sexism, racism, and the like."  *Id.* at 8.

There is no question here that the Film is a matter of public interest.  First, another court has already determined—indeed affirmatively declared—that the Film is a matter of significant public interest.  Furthermore, if comedic works containing far less social commentary are in the public interest, including purely comedic skits on the "Daily Show", "The Tonight Show", and Howard Stern's show, certainly a full-length motion picture that uses comedy to expose Americans' authentic reactions to an eccentric foreign visitor who exhibits unorthodox opinions and behaviors is equally worthy of protection.  *Walter*, 27 A.D.3d at 1070-71, 811 N.Y.S.2d at 523; *Kane*, 2003 WL 22383387, at *8-9; *Glickman*, 19 Med. L. Rptr. at 1775.  The Film weaves

12

together typical comedic elements including sight gags and scatological humor with broader social commentary, including some Americans' embrace of Borat's discriminatory remarks, but disdain for his "non-Western" behavior.    This is just the type of work that the "broadly construed" notion of the "public interest" is meant to embrace.

                b.      The Inclusion Of Plaintiff In The Film Has A Real Relationship To Its Newsworthy Purpose

Once a work has been deemed newsworthy, use of a person's image or likeness is protected from liability unless there is absolutely <u>no real relationship</u> between the use and the newsworthy purpose of the work. *See Messenger*, 94 N.Y.2d at 442-43, 706 N.Y.S.2d at 56.

Cases with a far more tenuous connection than is present here between the use of a plaintiff's image and the underlying work have been found to bear a real relationship.    A string of New York State Court of Appeals decisions demonstrate that even plaintiffs depicted in such a manner that a false implication could arise still have not stated a § 51 claim.    For example, in *Arrington v. New York Times Co.*, the plaintiff complained of a photograph of him on the cover of the *New York Times Magazine* illustrating an article about the black middle class, claiming the article espoused views he did not agree with and indeed subjected him to public scorn.    55 N.Y.2d 433, 437, 440 N.Y.S.2d 941, 942 (1982).    The court noted that because the statute was "drafted narrowly" and was to be read similarly, the photograph accompanying the newsworthy article could not form the basis of a § 51 claim even though the article espoused views the plaintiff did not support.    There was still a "real" connection between the photograph and the article (plaintiff—a middle class black man—accompanying an article about the black middle class) to bar a claim.    The court concluded that "[A]n inability to vindicate a personal predilection for greater privacy may be part of the price every person must be prepared to pay for a society in which information and opinion flow freely."  *Id.* 55 N.Y.2d at 442, 449 N.Y.S.2d at

13

945.  *See Messenger*, 94 N.Y.2d at 439, 706 N.Y.S.2d at 53 (on certified question from the U.S.

Court of Appeals for the Second Circuit [*see Messenger v. Gruner + Jahr Printing and Publ'g*,

175 F.3d 262 (2d Cir. 1999)], court determined photographs of 14-year-old plaintiff

accompanying article in magazine about a girl who "got trashed and had sex with three guys"

bore a real relationship to the newsworthy article despite the potential for a "substantially

fictionalized" implication that plaintiff was indeed the 14-year-old girl described in the article);

*Finger*, 77 N.Y.2d at 142-44, 564 N.Y.S.2d at 1015-17 (photograph of family illustrating article

about *in vitro* fertilization bore real relationship even though none of children depicted were

conceived by described fertility method).  These cases demonstrate that if a plaintiff's image is

used to illustrate a newsworthy item, a plaintiff cannot recover under § 51 even if "the use of the

likeness creates a false impression about the plaintiff."  *Messenger*, 94 N.Y.2d at 447, 706

N.Y.S.2d at 59.

       Here, there is a much more direct relationship between Plaintiff's appearance and the

newsworthiness of the Film than was exhibited in these cases.  These cases involve plaintiffs

who were used as mere symbols of the newsworthy topics discussed in the associated works, and

indeed often were portrayed to falsely imply their association with the works.  In comparison,

Plaintiff was one of numerous Americans accurately depicted reacting to Borat's antics in a

public place—which was one of the purposes of the Film.  The Film is a social commentary

about how Americans respond to foreign travelers who have atypical and offensive predilections

and behavioral tendencies.  And the scenes in New York at the beginning of the movie,

including the Sequence, set the tone for the whole movie. Borat's interaction with Plaintiff and

the other New Yorkers emphasize just how "foreign" he is to the American people – his actions

are so different, indeed, that they cause the Plaintiff to run in fear.  This theme of everyday

14

Americans responding to a stunning culture clash begins with Plaintiff in New York and then runs throughout the Film as a whole. As such, Borat's interaction with Plaintiff on a New York City public street undoubtedly bears a real relationship to the larger point made in the Film.[8]

### 2. Any Discussion Regarding The Ability Of The Film To Make A Profit Or Plaintiff's Level Of Embarrassment Is Not Relevant To The Section 51 Inquiry.

Because Plaintiff's appearance bears a real relationship to the newsworthiness of the Film, any discussion regarding the Film's ability to make a profit, the artistic merit of the Film, or Plaintiff's embarrassment from having appeared in the Film, is irrelevant to the § 51 inquiry.

A work that uses a plaintiff's image or likeness that bears a real relationship to a newsworthy matter of public interest cannot lose that protection merely because the work was motivated by the desire to make a profit. In fact, whether a work was made for profit or in fact made a profit is immaterial. Instead, a court must look <u>solely</u> to the content of the work. *Messenger*, 94 N.Y.2d at 442, 706 N.Y.S.2d at 55. Such a requirement flows naturally from the realities of the news and entertainment business:

The fact that defendants may have included this item in its column solely or

---

[8] The use of the Plaintiff's likeness in the Film contrasts with the use of the plaintiff's likeness in *Nieves v. Home Box Office, Inc.* 11 Misc. 3d 1058(A), 815 N.Y.S.2d 495, 2006 WL 516797 (Sup. Ct. N.Y. Co. Jan 10, *2006), aff'd,* 30 A.D.3d 1143, 817 N.Y.S.2d 227 (1st Dep't 2006). In that case, the court addressed the issue of whether some vulgar comments directed to a woman on the street in a program about a family of bounty hunters could give rise to a Section 51 claim. The court determined that it could not decide at the motion to dismiss stage whether the inclusion of the plaintiff and the derogatory comment bore any real relationship to the story about a bounty-hunting family. *Nieves* is clearly an outlier in the long line of cases discussed above in which courts broadly construe the real relationship test. But even if *Nieves* were not such an unusual decision, it would still not help the Plaintiff here. One of the clear purposes of the Film is to illustrate the responses of ordinary Americans to an eccentric foreign traveler who exhibits unfamiliar behavior as he tries to meet and interact with Americans. Borat's attempts to engage Plaintiff, and Plaintiff's flight down the street, dovetail squarely with this purpose. As such, there is a real relationship between the use of Plaintiff's likeness and the Film that is clear from the Film itself. Any efforts by Plaintiff to rely on *Nieves* would be misplaced.

> primarily to increase the circulation of its magazine and therefore its profits …
> does not mean that the defendant has used the plaintiff's picture for trade
> purposes…. Indeed, most publications seek to increase their circulation and also
> their profits. It is the content of the article and not the defendant's motive or
> primary motive to increase circulation which determines whether it is a
> newsworthy item, as opposed to a trade usage under the Civil Rights Law.

*Stephano*, 64 N.Y.2d at 184-85, 485 N.Y.S.2d at 225; *Man v. Warner Bros. Inc.*, 317 F. Supp. 50,

52 (S.D.N.Y. 1970) ("The mere fact that defendants are spurred by the profit motive and

engaged in the commercial exploitation of the motion picture does not negate their right to depict

a matter of public interest or to advertise the picture by the showing of a 'trailer' (coming

attraction)."). As such, any discussion of the Film's profits is misplaced.

Additionally, to the extent that Plaintiff simply does not like the way he has been

portrayed, or is embarrassed by that portrayal, such complaints are not actionable: "'That [a

plaintiff] does not like either the manner in which she is portrayed … or the medium in which

her picture is reproduced and her belief that that such reproduction has caused her

embarrassment, …do[es] not expand her rights or create any cause of action under Section 51 of

the Civil Rights Law.'" *Myskina*, 386 F. Supp. 2d at 419 (citations omitted); *Jones*, 1995 WL

106111, at *21 (same). *See also Allen v. St. Cabrini Nursing Home, Inc.*, No. 00 CIV 8558 CM,

2001 WL 286788, at *7 (S.D.N.Y. Mar. 9, 2001) ("There is no cause of action in New York for

public humiliation or embarrassment."); *Gaeta v. Home Box Office*, 169 Misc. 2d 500, 504, 507,

645 N.Y.S.2d 707, 710, 712 (N.Y. Civ. Ct. N.Y. Co. 1996) (plaintiff's "embarrassment—

however genuine and deeply rooted in principle—cannot render the use of her picture

actionable" under § 51).

**II.**
**PLAINTIFF'S CLAIM FOR QUANTUM MERUIT/**
**UNJUST ENRICHMENT IS SUBSUMED BY HIS**
**MISAPPROPRIATION CLAIM, AND THEREFORE SHOULD BE DISMISSED**

In his second cause of action, Plaintiff has brought a claim for Quantum Meruit/Unjust Enrichment.  However, it is well settled that this claim is duplicative of Plaintiff's § 51 cause of action, and therefore cannot stand.

Under New York law, in order for a plaintiff to recover on a quantum meruit/unjust enrichment claim, he must prove "(1) the performance of services in good faith, (2) the acceptance of the services by defendant, (3) an expectation of compensation, and (4) the reasonable value of the services."  *International Jet Markets, Inc. v. Simat, Helliesen & Eichner, Inc.*, No. 95 CIV. 7967(TPG), 1997 WL 501685, at *10 (S.D.N.Y. Aug. 20, 1997).  There is no question that Plaintiff's claim for quantum meruit/unjust enrichment is just one claim, given that unjust enrichment and quantum meruit "are best addressed as a whole since the latter is merely the means by which the former is remedied".  *Strauss v. Hearst Corp.*, No. 85 Civ. 10017 (CSH), 1988 WL 18932, at *9 (S.D.N.Y. Feb. 19, 1988).  Courts routinely treat quantum meruit and unjust enrichment as one claim even when plead as two separate claims.  *See, e.g. Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005).

Although it seems clear from the face of the Complaint that Plaintiff has not set forth the necessary elements to maintain an unjust enrichment claim, in part because Plaintiff obviously had no expectation whatsoever that he would be compensated for an appearance in a movie he had no idea was being filmed, even if the claim were properly plead, it still would fail because it is duplicative of Plaintiff's § 51 claim.  "Under New York law, common law unjust enrichment claims for unauthorized use of an image or likeness are subsumed by Sections 50 and 51." *Myskina*, 386 F. Supp. 2d at 420 (dismissing plaintiff's unjust enrichment claim as it shared same

17

factual allegations as § 51 claim). *See, e.g. Zoll v. Jordache Enters. Inc.*, No. 01 Civ. 1339(CSH), 2002 WL 31873461, at *15, *16 (S.D.N.Y. Dec. 24, 2002) (noting that there is no common law unjust enrichment claim separate from a § 51 claim); *Hampton*, 195 A.D.2d at 366-67, 600 N.Y.S.2d at 58-59 (unjust enrichment claim barred because "plaintiff has no property interest in his image, portrait or personality outside the protections granted by the Civil Rights Law").

Here, Plaintiff's § 51 claim and his unjust enrichment claim stem from the exact same set of facts regarding Plaintiff's brief appearance in the Film. As such, there is no question that Plaintiff's unjust enrichment claim is subsumed by his § 51 claim, and must be dismissed.

## <u>CONCLUSION</u>

For all of the foregoing reasons, defendant Twentieth Century Fox Film Corporation respectfully requests that this Court dismiss the Complaint in its entirety, with prejudice, and grant such other and further relief, together with costs, as this Court deems appropriate.

Dated: July 23, 2007

Respectfully submitted,

HOGAN & HARTSON LLP


By: s/ Slade R. Metcalf
Slade R. Metcalf  (SM 8360)
Katherine M. Bolger (KB 6206)
Jason P. Conti (JC 0581)
HOGAN & HARTSON LLP
875 Third Avenue
New York, New York 10022
Tel.  (212) 918-3000
Fac.  (212) 918-3100

*Attorneys for Defendant Twentieth Century*
  *Fox Film Corporation*
