Slade R. Metcalf (SM 8360)
Katherine M. Bolger (KM 6206)
Jason P. Conti (JC 0581)
Hogan & Hartson LLP
875 Third Avenue
New York, New York 10022
Telephone: (212) 918-3000
Facsimile: (212) 918-3100

*Attorneys for Defendant Twentieth Century Fox Film Corporation*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
JEFFREY LEMEROND,                                :
                                                 :
                    Plaintiff,    :   Case No.: 07 CIV 4635 (LAP)
                                                 :
    – against –                                :
                                                 :
TWENTIETH CENTURY FOX FILM CORP.,                :
                                                 :
                    Defendant.    :
------------------------------------------------------------------------X

**REPLY MEMORANDUM OF LAW OF TWENTIETH
CENTURY FOX FILM CORPORATION IN FURTHER SUPPORT
OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT**

                    HOGAN & HARTSON LLP
                    Slade R. Metcalf  (SM 8360)
                    Katherine M. Bolger (KB 6206)
                    Jason P. Conti (JC 0581)
                    875 Third Avenue
                    New York, New York 10022
                    Tel.  (212) 918-3000
                    Fac.  (212) 918-3100

                    *Attorneys for Defendant Twentieth Century*
                      *Fox Film Corporation*

\\\NY - 027721/000002 - 1053705 v3

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ...............................................................................................1

ARGUMENT

    PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED BECAUSE THE
    FILM IS NEWSWORTHY AND PLAINTIFF'S APPEARANCE HAS A
    REAL RELATIONSHIP WITH THE FILM'S NEWSWORTHY THEME ...........................2

    A.  It Is Entirely Proper To Dismiss This Action At
        This Stage Of The Litigation ...................................................................................2

    B.  The Film Is Newsworthy And A Matter Of Legitimate Public Interest ..............................3

    C.  Discovery Is Not Needed To Determine If The Film Is Newsworthy .................................6

    D.  There Is A Real Relationship Between Plaintiff's Appearance
        In The Film And The Newsworthiness Of The Film............................................8

CONCLUSION..........................................................................................................................10

## **TABLE OF AUTHORITIES**

**Page**

**Federal Cases:**

*Cerasani v. Sony Corp.*,
 991 F. Supp. 343 (S.D.N.Y. 1998)..................................................................................2

*Geary v. Goldstein*,
 No. 91 Civ. 6222 (KMW), 1996 WL 447776 (S.D.N.Y. Aug. 8, 1996) ..................5

*Geary v. Goldstein*,
 831 F. Supp. 269 (S.D.N.Y. 1993)..................................................................................5

*Groden v. Random House, Inc.*,
 61 F.3d 1045 (2d Cir. 1995)..............................................................................................7

*Joseph Burstyn, Inc. v. Wilson*,
 343 U.S. 495 (1952)...........................................................................................................5

*Lerman v. Flynt Distrib. Co.*,
 745 F.2d 123 (2d Cir. 1984),
 *cert. denied*, 471 U.S. 1054 (1985)................................................................................8

*Man v. Warner Bros. Inc.*,
 317 F. Supp. 50 (S.D.N.Y. 1970)....................................................................................7

*Myskina v. Conde Nast Publ'ns, Inc.*,
 386 F. Supp. 2d 409 (S.D.N.Y. 2005)............................................................................2

*Psihoyos v. National Examiner*,
 No. 97 Civ. 7624 (JSM), 1998 WL 336655 (S.D.N.Y. June 22, 1998)....................2

*Rogers v. Grimaldi*,
 695 F. Supp. 112 (S.D.N.Y. 1988),
 *aff'd*, 875 F.2d 994 (2d Cir. 1989) ................................................................................5

*Titan Sports, Inc. v. Comics World Corp.*,
 870 F.2d 85 (2d Cir. 1989)................................................................................................4

*Weinstein v. Friedman*,
 No. 94 Civ. 6803 (LAP), 1996 WL 137313 (S.D.N.Y. Mar. 26, 1996),
 *aff'd*, 112 F.3d 507 (2d Cir. 1996) ................................................................................5

*Zerman v. Sullivan & Crowell*,
 677 F. Supp. 1316 (S.D.N.Y. 1988)...............................................................................2


Case 1:07-cv-04635-LAP    Document 19    Filed 08/31/2007    Page 4 of 15

**State Cases:**

*Abdelrazig v. Essence Commcn's, Inc.*,
　225 A.D.2d 498, 639 N.Y.S.2d 811 (1st Dep't 1996) ..................................................8

*Arrington v. New York Times Co.*,
　55 N.Y.2d 433, 440 N.Y.S.2d 941 (1982),
　*cert. denied*, 459 U.S. 1146 (1983) ................................................................. 2, 3, 6

*Beverley v. Choices Women's Med. Ctr., Inc.*,
　78 N.Y.2d 745, 579 N.Y.S.2d 637 (1991) ..................................................................4

*Booth v. Curtis Publ'g Co.*,
　15 A.D.2d 343, 223 N.Y.S.2d 737 (1st Dep't),
　*aff'd*, 11 N.Y.2d 907, 228 N.Y.S.2d 468 (1962) ........................................................8

*Brinkley v. Casablancas*,
　80 A.D.2d 428, 438 N.Y.S.2d 1004 (1st Dep't 1981) ................................................4

*De Gregorio v. CBS, Inc.*,
　123 Misc. 2d 491, 473 N.Y.S.2d 922 (Sup. Ct. N.Y. Co. 1984) ................................7

*Doe v. One America Productions, Inc.*,
　SC091723 (Super. Ct. Los Angeles Co. Feb. 15, 2007) ........................................4, 6

*Finger v. Omni Publications Int'l*,
　77 N.Y.2d 138, 564 N.Y.S.2d 1014 (1990) ................................................................8

*Freihofer v. Hearst Corp.*,
　65 N.Y.2d 135, 490 N.Y.S.2d 735 (1985) ..................................................................3

*Gaeta v. New York News*,
　62 N.Y.2d 340, 477 N.Y.S.2d 82 (1984) ....................................................................4

*Glickman v. Stern*,
　19 Med. L. Rptr. 1769 (Sup. Ct. N.Y. Co. Oct. 15, 1991),
　*aff'd*, 188 A.D.2d 387, 592 N.Y.S.2d 581 (1st Dep't 1992) .......................................3

*Huggins v. Moore*,
　94 N.Y.2d 296, 704 N.Y.S.2d 904 (1999) ..................................................................4

\\\NY - 027721/000002 - 1053705 v3

*Messenger v. Gruner + Jahr Printing and Publ'g*,
    94 N.Y.2d 436, 706 N.Y.S.2d 52 (2000) ........................................................................ passim

*Namath v. Sports Illustrated*,
    48 A.D.2d 487, 371 N.Y.S.2d 10 (1st Dep't 1975),
    *aff'd*, 39 N.Y.2d 897, 386 N.Y.S.2d 397 (1976).............................................................8

*Nieves v. Home Box Office, Inc.*,
    30 A.D.3d 1143, 817 N.Y.S.2d 227 (1st Dep't 2006) ...............................................9

*Stern v. Delphi Internet Servs. Corp.*,
    165 Misc. 2d 21, 626 N.Y.S.2d 694 (Sup. Ct. N.Y. Co. 1995) .................................8

*Walter v. NBC Television Network, Inc.*,
    27 A.D.3d 1069, 811 N.Y.S.2d 521 (4th Dep't 2006)............................................3

*Ward v. Klein*,
    10 Misc. 3d 648, 809 N.Y.S.2d 828 (Sup. Ct. N.Y. Co. 2005) .................................3

**Federal Statutes/Rules:**

Fed. R. Civ. P. 12(b)(6)..............................................................................................1, 2

**State Statutes:**

N.Y. Civ. Rights Law § 51 .................................................................................. passim

Defendant Twentieth Century Fox Film Corporation ("Fox" or "Defendant"), by its undersigned attorneys, respectfully submits this reply memorandum of law in further support of its motion to dismiss the complaint of plaintiff Jeffrey Lemerond ("Plaintiff") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").[1]

### Preliminary Statement

Plaintiff agrees with Defendant that there is a protection provided to those defendants that create and distribute newsworthy material (or matters of public interest) under New York Civil Rights Law § 51 ("Section 51"). Plaintiff also apparently recognizes that the test for such protection under § 51 is whether the use of a plaintiff's name, picture, or portrait has a real relationship to the newsworthy nature of the medium being disseminated. Indeed, Plaintiff acknowledges that if this Court finds that the film at issue, *Borat – Cultural Learnings of America for Make Benefit Glorious Nation of Kazakhstan* (the "Film"), is newsworthy or a matter of public interest, and that his appearance in the Film has a real relationship with that newsworthy purpose, he will lose.

Plaintiff's real argument in his opposition to this motion is that whether his appearance in the Film is newsworthy and whether there is a real relationship between him and that newsworthy medium, cannot be determined at the motion to dismiss stage, even though the Court has a full copy of the Film to review. Plaintiff claims that he needs to take some undefined discovery to come up with facts which will disprove the plain (and indeed obvious) conclusion that Plaintiff's appearance in the Film running away from Borat had a direct (and of course

---

[1] The facts necessary for the determination of this motion are set forth in the accompanying declarations of Bonnie I. Bogin ("Bogin Decl."), sworn to the 19th day of July, 2007, and of Slade R. Metcalf, ("Metcalf Decl."), sworn to the 23rd day of July, 2007, and the exhibits annexed thereto, submitted with the Memorandum of Law of Twentieth Century Fox Film Corporation in Support of Its Motion to Dismiss the Amended Complaint (the "Opening Memorandum").

"real") connection to both the newsworthy nature of the particular scene in which Plaintiff appears and to the overall newsworthy nature of the Film.[2]  This motion should be granted.

## ARGUMENT

### PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED BECAUSE THE FILM IS NEWSWORTHY AND PLAINTIFF'S APPEARANCE HAS A REAL RELATIONSHIP TO THE FILM'S NEWSWORTHY THEME

A.   **It Is Entirely Proper To Dismiss This Action At This Stage Of The Litigation**

At the outset, it is abundantly clear that Section 51 claims are routinely dismissed without any discovery.[3]  Although federal courts in the Second Circuit have had limited opportunities to interpret Section 51 because it is a creature of state law, such claims have been dismissed pursuant to Fed. R. Civ. P. 12(b)(6), without any discovery.  *See, e.g., Cerasani v. Sony Corp.*, 991 F. Supp. 343, 350, 357 (S.D.N.Y. 1998); *Zerman v. Sullivan & Crowell*, 677 F. Supp. 1316, 1323 (S.D.N.Y. 1988).  *See also Psihoyos v. National Examiner*, No. 97 Civ. 7624 (JSM), 1998 WL 336655, at *6 (S.D.N.Y. June 22, 1998).  Numerous New York state cases have also dismissed Section 51 claims at the outset for failure to state a cause of action.  For example, in *Arrington v. New York Times Co.*, 55 N.Y.2d 433, 440 N.Y.S.2d 941 (1982), *cert. denied*, 459 U.S. 1146 (1983), the Court of Appeals affirmed the granting of a motion to dismiss because the publication of the plaintiff's image was protected by the newsworthiness exception.  Despite the

---

[2] Aside from the main sequence depicting Plaintiff (the "Sequence"), described in the Opening Memo, Plaintiff references a second instance in which he appears in the Film.  This appearance, lasting approximately two seconds towards the end of the Film, is merely part of a flashback of Borat's various antics and interactions with Americans during his travels.  *See* Bogin Decl. Ex. A.  Clearly the analysis presented in the instant motion is equally applicable to this brief segment.

[3] Notably, Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Plaintiff's Opposition") does not mention Plaintiff's second claim for quantum meruit/unjust enrichment.  As noted, in the Opening Memo (17-18), that claim is duplicative of Plaintiff's Section 51 claim, and therefore is improper.  *See, e.g.*, *Myskina v. Conde Nast Publ'ns, Inc.*, 386 F. Supp. 2d 409, 420 (S.D.N.Y. 2005).  Plaintiff apparently concedes the second claim must be dismissed.

2

fact that the plaintiff was on the cover of the *New York Times Magazine* in connection with an article about the black middle class (apparently only because he happened to be an African-American man wearing a suit), the Court of Appeals still affirmed the lower court granting of a motion to dismiss without any discovery despite plaintiff's pleas that he did not agree with the sentiments in the article. 55 N.Y.2d at 438, 442, 440 N.Y.S.2d at 943, 945. *See also Walter v. NBC Television Network, Inc.*, 27 A.D.3d 1069, 1070, 811 N.Y.S.2d 521, 523 (4th Dep't 2006) (granting motion to dismiss because comedy skit was newsworthy); *Ward v. Klein*, 10 Misc. 3d 648, 653-54, 809 N.Y.S.2d 828, 833 (Sup. Ct. N.Y. Co. 2005) (granting motion to dismiss because "rockumentary" about band was newsworthy). As such, this motion is not premature.

**B.      The Film Is Newsworthy And A Matter Of Legitimate Public Interest**

There can be no question that the Film is newsworthy and a matter of legitimate public interest. Whether a work is newsworthy or of public interest is a <u>question of law</u> for the court to decide. *Freihofer v. Hearst Corp.*, 65 N.Y.2d 135, 140-41, 490 N.Y.S.2d 735, 739 (1985) (overruling lower court's finding that there was a "factual issue" while finding that the determination whether content of the article was newsworthy was a question of law); *Walter*, 27 A.D.3d at 1070, 811 N.Y.S.2d at 523 (same). The breadth of newsworthy topics is very broad, even embracing comedic skits offering no social commentary. *See id.* (comedic "Headlines" segment on "The Tonight Show" deemed "newsworthy"); *Glickman v. Stern*, 19 Med. L. Rptr. 1769 (Sup. Ct. N.Y. Co. Oct. 15, 1991) (comedic skit on Howard Stern Show involving rubdown of plaintiff's wife "newsworthy"), *aff'd*, 188 A.D.2d 387, 592 N.Y.S.2d 581 (1st Dep't 1992).

Here, the Film presents more than a mere comedic skit; rather it contains social commentary regarding Americans' reactions to an atypical foreign traveler. The Film uses Americans' varied reactions to Borat's antics to expose issues ranging from racism, to sexism, to

3

ethnocentrism. These topics surely come within New York's admittedly "broad" concept of newsworthiness. *See Huggins v. Moore*, 94 N.Y.2d 296, 303, 704 N.Y.S.2d 904, 908-09 (1999); *Gaeta v. New York News*, 62 N.Y.2d 340, 349, 477 N.Y.S.2d 82, 85 (1984). Moreover, another court has already recognized the Film's newsworthiness. Plaintiff's Opposition does not address the finding in *Doe v. One America Productions, Inc.*, SC091723 (Super. Ct. Los Angeles Co. Feb. 15, 2007) (referred to in the Opening Memo), in which the court determined that "[I]t is beyond reasonable dispute (and undisputed) that the topics addressed and skewered in the movie – racism, sexism, homophobia, xenophobia, anti-semitism [sic], ethnocentrism, and other societal ills – are issues of public interest, and that the movie itself has sparked significant public awareness and debate about these topics." *Id.* at 4, 7, 8. While this Court clearly is not bound by *Doe*'s findings, it is instructive that another court has already found as a matter of law that the subject matter of the Film easily qualifies as newsworthy and a matter of public interest.

In seeking to avoid dismissal at this stage by arguing for discovery, Plaintiff relies on two cases. First, in *Titan Sports, Inc. v. Comics World Corp.*, 870 F.2d 85, 86 (2d Cir. 1989), the plaintiff sued regarding images of several professional wrestlers published in magazines on full color pages intended to be pulled out and displayed as posters. The court did not apply the newsworthiness defense, primarily because the product itself—a poster—was clearly commercial. *Id. See Brinkley v. Casablancas*, 80 A.D.2d 428, 433, 438 N.Y.S.2d 1004, 1008 (1st Dep't 1981) (sale of posters with plaintiff's image was "for trade purposes"). Similarly, in *Beverley v. Choices Women's Med. Ctr., Inc.*, 78 N.Y.2d 745, 751, 579 N.Y.S.2d 637, 640 (1991), the plaintiff complained that her photo appeared in a calendar that was "an advertising medium" used by a for-profit medical clinic. The court noted Choices was not "a media enterprise" and its calendar was "quintessential advertising material" that included its logo, address and phone

4

number on each page. *Id.* at 751-52, 579 N.Y.S.2d at 640-41.[4]

The uses of the plaintiffs' images in these cases were <u>commercial</u> in nature (posters and an advertisement). In contrast, the Film neither contains an advertising message, nor presents a commercial product; rather, it is an expressive work. Indeed, "motion pictures are a form of expression protected by the First Amendment." *Rogers v. Grimaldi*, 695 F. Supp. 112, 116 (S.D.N.Y. 1988), *aff'd*, 875 F.2d 994 (2d Cir. 1989) (citations omitted).

> It cannot be doubted that motion pictures are a <u>significant medium for the communication of ideas</u>. They may affect public attitudes and behavior in a variety of ways, ranging from direct espousal of a political or social doctrine to the subtle shaping of thought which characterizes all artistic expression. <u>The importance of motion pictures as an organ of public opinion is not lessened by the fact that they are designed to entertain as well as to inform</u>.

*Joseph Burstyn, Inc. v. Wilson,* 343 U.S. 495, 501 (1952) (emphasis added).

In what can only be considered as a puzzling attempt to salvage his unsupportable claim, Plaintiff next posits two hypothetical fact patterns involving a boy in his bedroom and Plaintiff's counsel's daughter. Plaintiff's Opposition at 12, 14-16. This Court is not required to entertain, much less resolve, Plaintiff's inappropriate hypothetical fact patterns, as they have nothing in common with the facts of <u>this case</u>. This Court merely must decide if <u>this Film</u> is newsworthy. This Court is not required to explore the outer limits of Section 51. Indeed, Plaintiff's reliance on these outlandish hypothetical fact patterns demonstrates the weakness of his argument.[5]

---

[4] Plaintiff's reliance on *Geary v. Goldstein*, 831 F. Supp. 269 (S.D.N.Y. 1993) is also misplaced. In that case, plaintiff's image from a commercial was spliced into a skit on a "sexually explicit" late-night cable program that gave no indication the skit was "a satire of a nationally broadcast commercial." *Id.* at 275. Although unlike the other cases which involve expressive works, the public interest aspect of the *Geary* skit, unlike the Film, was not apparent. Further, the court later backed away from the decision, dismissing the case on summary judgment. No. 91 Civ. 6222 (KMW), 1996 WL 447776, at *4 (S.D.N.Y. Aug. 8, 1996).

[5] Moreover, the <u>only</u> privacy cause of action in New York is the limited action afforded under Section 51. *See, e.g., Messenger v. Gruner + Jahr Printing and Publ'g*, 94 N.Y.2d 436, 441, 706 N.Y.S.2d 52, 54 (2000); *Weinstein v. Friedman*, No. 94 Civ. 6803 (LAP), 1996 WL 137313

Plaintiff seems to argue that even if the Film addresses newsworthy topics, its presentation is so offensive and in such poor taste that the newsworthiness exception should not apply. Not only is there absolutely no support for this patently incorrect interpretation of the statute, the Court of Appeals has expressly cautioned against such judgments, noting, "it would be unwise [in Section 51 cases] for us to essay the dangerous task of passing on value judgments based on the subjective happenstance of whether there is agreement with views expressed on a social issue." *Arrington*, 55 N.Y.2d at 441, 440 N.Y.S.2d at 944-45. Plaintiff's assertions have no merit; the Film is clearly newsworthy.

C.  **Discovery Is Not Needed To Determine If The Film Is Newsworthy**

Plaintiff attempts to avoid dismissal by urging that discovery is required to decide the issues on this motion. First, Plaintiff curiously suggests that in order to determine the newsworthiness of the Film, he needs discovery to determine whether the authentic reactions of people in the Film "were, in fact, *staged*."[6] Plaintiff's Opposition at 9. However, the determination as to whether the Film is newsworthy does not depend on whether every reaction in the entire Film was spontaneous. For the purposes of <u>this</u> case and <u>this</u> motion, Plaintiff's reaction to Borat's approach was concededly not staged.

Next, Plaintiff incorrectly claims that Plaintiff's status as a private individual is relevant. However, in *Messenger v. Gruner + Jahr Printing and Publ'g*, 94 N.Y.2d 436, 706 N.Y.S.2d 52 (2000), the Court noted that the plaintiff's Section 51 claim would have been dismissed had the

---

(S.D.N.Y. Mar. 26, 1996), *aff'd*, 112 F.3d 507 (2d Cir. 1996). Arguments to change the scope of § 51 should be made to the New York State Legislature, not to this Court.

[6] Plaintiff makes the unsupported assertion that it is possible the scene depicting three fraternity members (litigated in the *Doe* action) "was staged" in that they may have been "encouraged … to make sexist and racist remarks". No such allegations appear anywhere in the *Doe* decision. In fact, it is this very decision where the judge ruling on certain claims (including the California misappropriation statute, which is similar to § 51), found that the Film was newsworthy. *See* p. 4, *supra*.

6

plaintiff been an unknown teenager (which plaintiff was in that case) or a famous person. The Court held that, "The test is not whether plaintiff is a public or private figure. Rather, the analysis centers on whether the photograph bears a real relationship to a newsworthy article…." *Id.* at 447, 706 N.Y.S.2d at 59.

Further, Plaintiff's contention that he was "simply out for a stroll" when Borat picked him out to approach and film, is irrelevant. Plaintiff's Opposition at 10. Plaintiff need look no further than *De Gregorio v. CBS, Inc.*, 123 Misc. 2d 491, 473 N.Y.S.2d 922 (Sup. Ct. N.Y. Co. 1984) to realize that his experience is not unique—or indeed actionable. In that case, a (married) construction worker and his female co-worker were walking on Madison Avenue holding hands when they were filmed for a story about romance. *Id.* at 491, 473 N.Y.S.2d at 923. The court concluded that "The fact that the plaintiff here shunned publicity will not result in a determination of liability under Section 51 as long as the publication was a report on a subject of public interest." *Id.* at 493, 473 N.Y.S.2d at 924. The plaintiff "was filmed in a public place and can have no expectation of privacy in that location." *Id.* at 494, 473 N.Y.S.2d at 925.

Plaintiff next alleges that his (blurred) appearance in a trailer for the Film is somehow relevant. Plaintiff has not sued regarding the trailer, and therefore discovery regarding the trailer is unnecessary. However, even if Plaintiff's image had not been blurred in the trailer, and even if he had brought a claim based on that appearance, Plaintiff <u>still</u> could not recover. It is proper to advertise a matter of public interest, like the Film, through the use of a trailer without violating § 51. *See, e.g.*, *Groden v. Random House, Inc.*, 61 F.3d 1045 (2d Cir. 1995) (plaintiff's name and photo used in advertisements for books in which plaintiff's work discussed did not violate Section 51); *Man v. Warner Bros. Inc.*, 317 F. Supp. 50, 52 (S.D.N.Y. 1970) ("The mere fact that defendants are spurred by the profit motive and engaged in the commercial exploitation of the

motion picture does not negate their right to depict a matter of public interest or to advertise the picture by the showing of a 'trailer' …"); *Stern v. Delphi Internet Servs. Corp.*, 165 Misc. 2d 21, 30, 626 N.Y.S.2d 694, 700 (Sup. Ct. N.Y. Co. 1995) (use of plaintiff's photo to advertise nature and style of news service did not violate Section 51). *See also*, *Namath v. Sports Illustrated*, 48 A.D.2d 487, 371 N.Y.S.2d 10 (1st Dep't 1975), *aff'd*, 39 N.Y.2d 897, 386 N.Y.S.2d 397 (1976) (use of photo of plaintiff in advertisement for magazine which photo initially appeared in magazine itself was not violative of § 51 because it shared same protection); *Booth v. Curtis Publ'g Co.*, 15 A.D.2d 343, 223 N.Y.S.2d 737 (1st Dep't), *aff'd*, 11 N.Y.2d 907, 228 N.Y.S.2d 468 (1962) (same).

### D. There Is A Real Relationship Between Plaintiff's Appearance In The Film And The Newsworthiness Of The Film

Because the Film is clearly newsworthy and a matter of public interest, Plaintiff must either demonstrate that there is no "real relationship" between the newsworthiness of the Film and Plaintiff's depiction in the Film, or that the Film is an advertisement in disguise.[7] *Messenger*, 94 N.Y.2d at 442, 706 N.Y.S.2d at 56. Thus it is the Plaintiff's burden, not Defendant's, to show that there is no real relationship here. *Lerman v. Flynt Distrib. Co.,* 745 F.2d 123, 131 (2d Cir. 1984), *cert. denied*, 471 U.S. 1054 (1985) (noting that if work is of public interest, to prevail, a plaintiff "must … demonstrate that the use of plaintiff's name or likeness has no real relationship to the discussion…").

No discovery is needed here because whether a real relationship exists is a question of law for the court. *Finger v. Omni Publications Int'l*, 77 N.Y.2d 138, 144-45, 564 N.Y.S.2d 1014, 1017-18 (1990); *Abdelrazig v. Essence Commcn's, Inc.*, 225 A.D.2d 498, 498, 639 N.Y.S.2d

---

[7] Because Plaintiff is included in a full-length motion picture, Plaintiff (understandably) has not argued that the use of his image was an advertisement in disguise.

811, 812 (1st Dep't 1996). These two cases decided as a matter of law that plaintiffs could not raise an issue of fact that no real relationship existed between the content of the article and the photographs of the plaintiffs in those cases.

Plaintiff next claims that his interaction with Borat stands in "<u>stark contrast</u>" with another scene in which Borat approaches a man on a New York street and says "'Hello, my name a Borat. I am new in town. I kiss you.'" Plaintiff's Opposition at 17. Plaintiff concedes that "this exchange at least arguably has a 'real connection' to the alleged theme of Americans' 'reactions to an eccentric foreign visitor' because Borat expressly made the gentleman aware that he was 'new in town.'" *Id.* Plaintiff mystifyingly asserts "the same is not true of Plaintiff", as "Borat did not tell Plaintiff he was 'new in town' [but] merely said 'nice to meet you.'" *Id.*

On the contrary, Borat <u>does</u> introduce himself to Plaintiff by stating "'Hello, nice to meet you. <u>I'm new in town</u>. My name a Borat.'" Bogin Decl. Exs. A, B (emphasis added). Borat obviously speaks in a heavy Eastern European accent and dresses in unusual clothing. As such, there is clearly a real relationship between Plaintiff's appearance in the Film over-reacting to Borat's greeting, and the Film's newsworthiness—the exposition of Americans' varied reactions to an atypical foreigner.[8]

Finally, there is perhaps no more instructive case regarding the extremely narrow parameters of a Section 51 claim than *Messenger*, 94 N.Y.2d 436, 706 N.Y.S.2d 52, which is the Court of Appeals' most recent recitation of the law regarding Section 51. *Messenger* involved a commercial misappropriation claim brought by a 14-year-old girl stemming from the use of her

---

[8] Plaintiff's reliance on the unusual case of *Nieves v. Home Box Office, Inc.,* 30 A.D.3d 1143, 817 N.Y.S.2d 227 (1st Dep't 2006) is unavailing. That case involved vulgar commentary about a woman on the street made by the subjects of a bounty-hunting documentary. The court declined to grant a motion to dismiss because it could not find as a matter of law that there was an obvious connection between the appearance of the woman on the street and bounty hunting. *See id.* Here, Plaintiff's relationship to the newsworthiness of the Film is evident on screen.

image to accompany a letter from a reader claiming she "got trashed and had sex with three guys". Noting that the case presented an important issue regarding Section 51—a creature of state law—the Second Circuit Court of Appeals certified a question to the New York Court of Appeals as to the scope of § 51 in the context of that case.

The Court of Appeals reiterated prior precedent and held that the use of a plaintiff's image in connection with a newsworthy work is not actionable under Section 51 "unless the picture has no real relationship to the article or the article is an advertisement in disguise"; as such, any connection is sufficient to defeat a § 51 claim. *Id.* at 442, 706 N.Y.S.2d at 56. The New York Court of Appeals therefore held that while a "false implication" might have been possible in that case, the claim must be dismissed because the topic of the column was newsworthy, and plaintiff's photograph bore a real enough connection to the newsworthy topic—even though Plaintiff was not the author of the letter. *Id.* at 444-45, 706 N.Y.S.2d at 57.

## CONCLUSION

For all of the foregoing reasons, defendant Twentieth Century Fox Film Corporation respectfully requests that this Court dismiss the Complaint in its entirety, with prejudice, and grant such other and further relief, together with costs, as this Court deems appropriate.

Dated: August 31, 2007

Respectfully submitted,

HOGAN & HARTSON LLP

By: s/ Slade R. Metcalf
Slade R. Metcalf (SM 8360)
Katherine M. Bolger (KB 6206)
Jason P. Conti (JC 0581)
HOGAN & HARTSON LLP
875 Third Avenue
New York, New York 10022
Tel. (212) 918-3000
*Attorneys for Defendant Twentieth Century Fox Film Corporation*