USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/31/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -X
JEFFREY LEMEROND,             :     07 Civ. 4635 (LAP)
                              :
               Plaintiff,     :     MEMORANDUM AND ORDER
                              :
     v.                       :
                              :
TWENTIETH CENTURY FOX FILM CORP., :
                              :
               Defendant.     :
                              :
- - - - - - - - - - - - - - - - - -X

LORETTA A. PRESKA, U.S.D.J.

This action arises from the brief use of Plaintiff's image in Defendant's film, BORAT -- Cultural Learnings of America for Make Benefit Glorious Nation of Kazakhstan ("Borat"). Plaintiff filed this action on June 1, 2007, asserting claims under New York Civil Rights Law § 51 ("NYCRL § 51") and under New York common law for the unlawful use of his image. Defendant moved to dismiss for failure to state a claim under Rule 12(b)(6), and, for the reasons set out below, that motion is GRANTED.

DISCUSSION

Released in theaters in the United States in November 2006, Borat tells the fictional story of a fictional Kazakh television personality, Borat Sagdieyev, who is sent to the United States by a fictional governmental entity, the "Kazakhstan Ministry of

1

Information," to produce a fictional report on the American people. (Compl. ¶ 1.; see also Bogin Decl., Ex. B (Borat Movie).) One sequence in the movie contains a series of clips of Borat greeting and otherwise interacting with people in New York City, chronicling their various reactions. (See Defs' Mem. 3.)

One such clip, at issue in this litigation, shows Borat, with a heavily accented voice, greeting Plaintiff on the corner of 5th Avenue and 57th Street in Manhattan. Approaching Plaintiff, Borat extends his hand and says: "Hello, nice to meet you. I'm new in town. My name a Borat." (Compl. ¶ 7.) Before Borat can finish his greeting, however, and without further provocation, Plaintiff begins to run away in apparent terror, screaming "Get away!" and "What are you doing?" (See Defs' Mem. 4.) The 13-second clip concludes as Borat responds, "What is the problem?" (Comp. ¶ 8.) Defendants never obtained consent to use Plaintiff's image, which appears twice in the movie and once in its trailer advertisement. (Compl. ¶¶ 7, 9.) In the trailer, Plaintiff's face is scrambled, rendering his likeness "blurry" and indiscernable; his face is not scrambled in the film itself. (Comp. ¶ 11.)

For the purposes of this motion to dismiss, the court must accept as true the material facts alleged in the complaint, drawing all reasonable inferences in plaintiffs' favor. See

2

Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246, 250 (2d Cir. 2001).

1. Plaintiff's NYCRL § 51 Claim

New York does not recognize a common-law right of privacy. See, e.g., Hurwitz v. United States, 884 F.2d 684, 687 (2d Cir. 1989); Messenger v. Gruner + Jahr Printing and Publ'g, 94 N.Y.2d 436, 441, 706 N.Y.S.2d 52, 54 (N.Y. 2000). Instead, it provides limited statutory protection through, inter alia, NYCRL § 51, which provides a cause of action for "[a]ny person whose name, portrait, picture or voice is used within [New York] for advertising purposes or for the purposes of trade without" their written consent. See N.Y. Civ. Rights Law § 51 (McKinney 2001). To state a claim under NYCRL § 51, therefore, a plaintiff must allege: (1) the use of his name, portrait, or likeness; (2) for "advertising purposes or for the purposes of trade;" (3) without written permission. See Titan Sports, Inc. v. Comics World Corp., 870 F.2d 85, 87 (2d Cir. 1989) (citing Brinkley v. Casablancas, 80 A.D.2d 428, 438, N.Y.S.2d 1004, 1007 (1st Dep't 1981)).

Because factors (1) and (3) are not disputed, the only question here is whether Plaintiff's likeness was used for "advertising purposes or for the purposes of trade" within the

3

meaning of NYCRL § 51. Notably, New York courts have consistently held that that section "is to be narrowly construed and 'strictly limited to nonconsensual commercial appropriations of the name, portrait or picture of a living person.'" Messenger, 94 N.Y.2d at 441, 706 N.Y.S.2d at 55 (emphasis supplied) (quoting Finger v. Omni Publ'ns Int'l, 77 N.Y.2d 138, 141, 564 N.Y.S.2d 1014 (N.Y. 1990)). Thus, the nonconsensual use of a plaintiff's image to depict "newsworthy events or matters of public interest" does not fall within the statute's reach. See Stephano v. News Group Publ'ns, Inc., 64 N.Y.2d 174, 184, 485 N.Y.S.2d 220, 224-25 (N.Y. 1984). Courts have also observed that this "newsworthiness" exception should be broadly construed to include, "not only descriptions of actual events, but also articles concerning political happenings, social trends or any subject of public interest." Messenger, 94 N.Y.2d at 441-42, 706 N.Y.S.2d at 55.

The question of newsworthiness is a question of law to be determined by the courts. See Freihofer v. Hearst Corp., 65 N.Y.2d 135, 140-41, 490 N.Y.S.2d 735, 739 (N.Y. 1985). In determining whether an item is newsworthy, courts consider solely the "content of the article" -- not the publisher's "motive to increase circulation." Stephano, 64 N.Y.2d at 184-85, 485 N.Y.S.2d at 225. Furthermore, courts should be wary not to "supplant the editorial judgment of the media in determining

4

what is 'newsworthy' or of 'public interest.'" Glickman v. Stern, 19 Med. L. Reptr. 1769, 1776 (Supp. Ct. N.Y. Co. Oct. 15, 1991), aff'd 592 N.Y.S.2d 581 (1st Dep't 1992); see also Paulsen v. Personality Posters, Inc., 59 Misc.2d 444, 450, 299 N.Y.S.2d 501, 508 (Sup. Ct. N.Y. Co. 1968) ("What is one man's amusement, teaches another's doctrine"). Consequently, "public interest" and "newsworthy" have "been defined in most liberal and far reaching terms." Paulsen, 59 Misc.2d at 448, 299 N.Y.S.2d at 506; see also De Gregorio v. CBS, 123 Misc. 2d 491, 493, 473 N.Y.S.2d 922, 924 (Sup. Ct. N.Y. Co. 1984) (newsworthiness includes "all types of factual, educational and historical data, or even entertainment and amusement, concerning interesting phases of human activity in general"). Compare Walter v. NBC Television Networks, Inc., 811 N.Y.S.2d 521 (4th Dep't 2006) (use of plaintiff's image in "Headlines" segment of Jay Leno's "The Tonight Show" was not actionable because segment was newsworthy), with Glickman, 19 Med. L. Rptr. 1769 (comedic skit on Howard Stern show featuring Stern and Plaintiff's wife "certainly presented a situation of interest to the public"), and Weil v. Johnson, Index No. 119431/02, 2002 WL 31972157, *4-5 (Sup. Ct. N.Y. Co. Sept 27, 2002) (documentary on lives of children from wealthy families was of public interest). Accord Beverley v. Choice Women's Med. Ctr., 532 N.Y.S.2d 400 (2d Dep't 1988), aff'd, 78 N.Y.2d 745 (N.Y. 1991) (use of plaintiff's

5

image in defendant's calendar, which was clearly "solicitation for commercial patronage and an advertisement in disguise," constituted commercial use).

With these principles in mind, it is beyond doubt that Borat fits squarely within the newsworthiness exception to NYCRL § 51. Of course, the movie employs as its chief medium a brand of humor that appeals to the most childish and vulgar in its viewers. At its core, however, Borat attempts an ironic commentary of "modern" American culture, contrasting the backwardness of its protagonist with the social ills afflict supposedly spohisticated society. The movie challenges its viewers to confront, not only the bizarre and offensive Borat character himself, but the equally bizarre and offensive reactions he elicits from "average" Americans. Indeed, its message lies in that juxtapostion and the implicit accusation that "the time will come when it will disgust you to look in a mirror." Such clearly falls within the wide scope of what New York courts have held to be a matter of public interest.[1]

---

[1] Plaintiff argues that the use of his image in the "trailer," not the movie, constitutes an advertising use. (See Pl's Opp'n 11.) However, "the mere fact that defendants are spurred by the profit motive and engaged in the commercial exploitation of [a] motion picture does not negate their right to depict a matter of public interest or to advertise the picture by the showing of a 'trailer.'" Man v. Warner Bros. Inc., 317 F. Supp. 50, 52 (S.D.N.Y. 1970).

6

Having determined that the newsworthiness exception applies, liability under NYCRL § 51 cannot ensue "unless there is no real relationship . . . to the article or the article is an advertisement in disguise." Messenger, 94 N.Y.2d at 442-43, 706 N.Y.S.2d at 56. Whether Plaintiff's image bears such a relationship to the movie is also a question of law, see Omni Publ'ns Int'l, 77 N.Y.2d at 143, 564 N.Y.S.2d at 1017-18, as to which there is no other answer but that it does. The scene depicting Plaintiff is part of a series of clips showing Borat's first exposure to American culture that emphasizes the differences between Borat's home village and his American destination. The clip with Plaintiff casts these differences in particular relief and, in so doing, bears a direct relationship to the theme of "otherness" decsribed above. As such, it falls within that broad exception recognized by New York courts for newsworthy items or matters of public interest and, therefore, is not actionable under NYCRL § 51.

2. <u>Plaintiff's State Common Law Claims</u>

Plaintiff also asserts theories of unjust enrichment and quantum meruit. These two claims, however, are properly treated as one claim. See <u>Strauss v. Hearst Corp.</u>, 85 Civ. 10017 (CSH), 1988 WL 18932, *9 (S.D.N.Y. Feb 19, 1988) ("The two theories are best addressed as a whole since the latter is merely the means

7

by which the former is remedied.") (citing S.S. Silberblatt, Inc. v. East Harlem Pilot Block, 608 F.2d 28, 37 (2d Cir. 1979)). It is well settled that there is no common law privacy cause of action in New York, and thus the only relief for a violation of a right to privacy falls under NYCRL § 50 or NYCRL § 51. See Myskina v. Conde Nast Pub'lns., 386 F. Supp. 2d 409, 420 (S.D.N.Y. 2005); Arrington v. New York Times, 55 N.Y.2d 433, 439 (N.Y. 2000); Grodin v. Liberty Cable, 244 A.D.2d 153, 154, 664 N.Y.S.2d 276 (1st Dep't 1997).  Thus, under New York law, common law claims for unjust enrichment related to unauthorized use of a person's image or likeness are subsumed under §§ 50, 51. See Zoll v. Jordache Enter., Inc., 01 Civ. 1339, 2002 WL 31873461, *16 (S.D.N.Y. Dec. 24, 2002); Allen v. Men's World Outlet, Inc., 679 F. Supp. 360, 365 (S.D.N.Y. 1988); Hampton v. Guare, 195 A.D.2d 366, 600 (1st Dep't 1993).

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss the complaint [dkt. no. 12] must be GRANTED.

   The Clerk of the Court shall mark this action closed and all pending motions denied as moot.


SO ORDERED:

DATED:   New York, New York
         March 31, 2007

                                        _____
                                        LORETTA A. PRESKA, U.S.D.J.

9